TOWSLEY *v.* JOHNSON.

## Towsley v. Johnson.

1. PRE-EMPTIONS: *Object of restrictions.* The several provisions of the preëmption act of September 4, 1841, as to settlement, cultivation, inhabitancy, &c., were designed to secure permanent, actual settlers on the public lands.

2. —— : ——. Such a settler will not be deprived of the benefits of the act, by giving to some provision of law a harsh and inequitable construction, when applied to his case, unless the terms of the statute clearly and imperatively require it.

3. —— : *Priority.* The first settler who has complied with all the provisions of the law in good faith, is entitled to the land settled upon, whatever any subsequent settler may do in respect thereof.

4. —— : *Conveyances in fraud of the law.* A person occupying a portion of the public land under a supposed right, may, after such right fails, assert a preëmption claim thereto ; and the fact of his having mortgaged his supposed interest under the invalid claim, will not vitiate his preëmption right.

5. —— : ——. Nor will conveyances of the lands after he has preëmpted them, invalidate his entry.

6. —— : *Town improvements.* Surveying a tract of public land and dividing it into town lots, making a plat of it as a town, and building one house on one lot, are acts insufficient to impress upon it the character of a town, so as to withdraw it from the operation of the preëmption law. And especially so, after the design of building the town has been abandoned.

7. *Smiley* v. *Sampson, ante,* followed.

8. ESTOPPELS must be reciprocal.

This is an appeal from a decree, rendered by Mr. Justice CROUNSE, sitting in the District Court for Douglass county.

It was a bill in chancery, filed by John W. Towsley, against these appellants, to recover the legal title to the premises in question. The record shows the following facts :

Towsley, being the head of a family and a citizen of the United States, and never having enjoyed the privilege of

TOWSLEY *v.* JOHNSON.

preëmpting any part of the public land, unless he did so under the circumstances hereafter stated, and not being the proprietor of three hundred and twenty acres of land, and not having quit or abandoned his own land to reside on.the public land, on the 15th of June, 1858, settled upon the west half of south-west quarter of section 3, in township 15, north range 13, east of the 6th principal meridian, and has ever since inhabited the same. These lands, and also those adjoining, that is to say, the west half of north-west quarter of section 10, in the same township and range, were not, in any manner, nor for any purpose, reserved by the government, nor included within the limits of an incorporated town, nor, save as is hereafter stated, selected as the site for a city or town; nor were they occupied for the purposes of trade; nor were any known salines or mines situated thereon. Prior to the day aforesaid, he built a dwelling house and out-houses on said lands, at a cost and of the value of over $1,500; and during that year he broke, and has ever since cultivated them, and being entirely unimproved and vacant when he entered upon them, he, by his improvements and cultivation, has converted them into a good, substantial, husband-like farm.

On the 15th of August, in said year, he tendered to the register of the United States land office at Omaha, his statement of intention to preëmpt the said premises, under the act of 4th September, 1841; and requested that officer to file the same; but this was refused; because, as was alleged, the lands had been previously entered by one Bennett, as a mail contractor. Bennett's entry was illegal and void; and was shortly afterwards so declared by the Secretary of the Interior, and was accordingly set aside and canceled.

On the 4th of February, 1859, Towsley filed with said register the statement previously tendered by him.

One Kountze claimed the second above described lands under said act, and a settlement thereon prior to Towsley.

TOWSLEY v. JOHNSON.

·The question of their respective claims was, after protracted proceedings in the land department, determined in favor of Kountze, on the ground that he was the first settler; and it was then, that is, on the 22d day of August, 1862, decided by the said department, that Towsley was entitled to the lands first above described.

On the 5th of October, 1860, the appellant, Johnson, removed from a place about a mile distant, on to the lands so adjudged to Towsley, a small house worth about $200, and fenced a small enclosure. The house was easily removable; and it is charged that it was intended to be only temporary. This house he and his family have, at different times, lived in; but, as is alleged, only for brief periods, when the varying decisions of the land department seemed to render it necessary, in order to enable him to secure the land under the preëmption law. During most of the time, he has actually lived in Omaha; where he has carried on business as a photographer.

On the day of his said alleged settlement, Johnson filed with the register, his declaratory statement of intention to preëmpt these lands. In that year, also, the respective claims thereto of Towsley and Johnson were investigated by the local office, and the matter determined in favor of the former, and this decision was affirmed by the commissioner of the general land office.

On the 20th day of September, 1862, he took the prescribed oath, and entered the land, and received the patent certificate therefor.

Thereafter, he proceeded to make further improvements at the cost and of the value of $3,000.

The dispute between Towsley and Johnson having been by the latter carried by appeal to the Secretary of the Interior, that officer on the 11th of July, 1863, decided that Towsley's entry was illegal, for the sole reason that on the 2d of April, 1858, he had filed on another tract in the

TOWSLEY v. JOHNSON.

Brownville district. The facts connected with this matter were these: Immediately after making this filing, he returned to Douglas county for his family, with the purpose of removing them to the lands so filed upon. But, soon afterwards, he broke his arm, by which accident he was disabled from going to Nemaha county. On his recovery, he went there and found that one McArthur had settled upon and preëmpted them. Towsley went to the land office at Brownville, and asked the officers there, what course to pursue. He was advised by them to abandon his claim, because he could not recover the land, and his rights under the law to preëmpt another tract were not compromised by what he had done. Accepting this advice, he abandoned the land and his claim thereto, and so told the officers; and has never since alleged any interest therein.

Repeated efforts to obtain from the Secretary a reconsideration of his decision, and also a reference of the matter to the Attorney General, were unsuccessful, and resulted only in the statement by the land department, that if the decision was erroneous the remedy would be granted in the local courts.

Afterwards Johnson effected his entry, upon which a patent was issued to him. Parts of the premises he afterwards conveyed to the other appellants, who were impleaded to the amended bill.

In 1856, the Sulphur Springs Land Company, claiming the land in dispute, together with several thousand acres adjoining, surveyed them into lots and streets, with the view of building thereon a town, to be known as Saratoga. It built a hotel near the lands in question, and also laid the foundation of another hotel. It also gave to parties building houses on these lands, parcels of ground proportionate to the value of the improvements made by them; and Towsley himself first went upon the tract, under some agreement of this character with the company. It is alleged

that when Towsley built his house, the lands here claimed by him, were occupied as the town site of Saratoga.

*J. I. Redick*, for the the appellant Johnson.

*J. M. Woolworth*, for the appellee Towsley.

Mason, Ch. J.

If we reverse this decree, we shall drive from these premises, a citizen who has, with his family, lived and made his home upon them for more than ten years ; who entered upon them when they were raw prairie, and opened upon them a farm ; who has gone on year by year adding to his improvements, until now his farm-house, his barns, his fences, his implements of husbandry, his cultivated fields, his crops, attest not only his industry and thrift, but his honest intention, at the first, and thence down to this day, to make here, for himself and his family, his home.

If we reverse this decree, we shall take from this citizen this home of his, and these improvements of his hands, and give them to a man who never permanently made a home here, and who from first to last, has not expended in money or labor but the merest trifle.

Towsley's original claim of preëmption to these lands was, *bona fide*, to secure them under the beneficent provisions of the law, solely for himself. Johnson's claim was with the view from the first of getting them, not for himself alone, but for himself and others ; and not for his permanent home, but to speculate in them. The improvements of the former have cost at least $5,000 ; those of the latter have not cost as many hundreds. The former has put one half of the premises in the highest state of cultivation. The latter never cultivated but one acre, and that but for a single season, in a melon patch. Tows-

ley has amply, honestly, in spirit, if not in the letter, complied with and entitled himself to all the benefits of the law. Johnson, if he has met its easy requirements in the letter, has not even tried to comply with the spirit of the act.

And we are urged to lend ourselves and the processes of this court of justice and equity to this measure on a ground merely technical. For the objections urged to Towsley's rights are not matters arising between him and Johnson, by reason of which the latter has any personal complaint against the former. They are not objections, which, if well founded in fact, would work any injury to the government. The object, and the sole object of the guards thrown around the privilege of preëmption by the law, is to secure on the public lands, actual permanent settlers. Such was Towsley. So that the object of the law was in his case fully subserved.

If there be some express positive provision of the law which he has not complied with, or which he has violated, of course it must be applied, and he must bear the consequences of his neglect or disobedience of it, even though those consequences be so unhappy and so unequal as to give his home to one who did not build it, and who has done nothing to deserve it.

But a provision of law to have that effect, must be clear in its terms, and imperative in its demands.

Towsley settled on these lands in 1857, and asserted his preëmption right thereto, in 1858. Johnson did not settle on them, nor assert any right to them until 1860. Towsley being thus the first settler, if he has in all respects complied with the law, is entitled to the lands, without regard to anything which Johnson may have done. We have then to consider his rights first. And inasmuch as the record shows too clearly to admit of question, that his settlement on the premises was very early in the history

TOWSLEY v. JOHNSON.

of this Territory, and his claim under the preëmption law ante-dated his adversary's two years, and inasmuch as his continued inhabitancy and extended and valuable improvements are in no particular assailed, I shall content myself with a brief consideration of objections urged against his claims to the lands.

The first objection urged against him is, that in consequence of the manner in which he went into possession of the premises, Towsley is estopped to allege any preëmption—right to the premises. The circumstances of this branch of the case are these :

In 1856, the Sulphur Springs Land Company was formed for the purpose of building a town on these and the adjoining lands. For this purpose, they laid claim to some 4,000 acres ; that is, they asserted that they had possession of, and were able and ought to keep others out of the possession thereof. For this, there was no law ; indeed the laws of congress forbade this. A part of this immense body they laid out into lots as a town. The lands here in question were so laid out and divided. The means by which they sought to populate this paper town, was to agree to give to any party who would build on one or more of these lots the title thereto, when the company should acquire it.

The lands here in question were thus laid off, and an agreement of this character was made by the company with Towsley. That is, the company agreed to make to him the title to two lots, when he should build a house of certain dimensions thereon. Towsley built the house, it being the farm-house, in which he has ever since lived. The company acquired a title to the lands by virtue of a preëmption entry thereof, made by one Bennett as a mail contractor. But it does not appear that it ever conveyed to Towsley the two lots according to its agreement. This may not be material, for shortly afterwards this preëmption entry of Bennett's was set aside by the Secretary of the Interior, as illegal and

void. The company was thus disabled to perform the agreement on its part. Besides, the title, which by means of fraudulent preëmptions, it had acquired to other lands, was also vacated, and it was left without means. It became insolvent and went out of existence.

It was at this period that Towsley asserted his preëmption—right to these lands. There is no pretence for saying that his previous dealings with this company stood in the way of his doing so successfully. So far as the technical doctrine of estoppel is concerned it cannot avail Johnson, for he is a stranger. Coke says (*Co. Litt.* 352, *a*) : "Every estoppel ought to be reciprocal, that is, to bind both parties ; and this is the reason, that regularly a stranger shall neither take advantage, nor be bound by the estoppel." Nor had the land been selected as the site of a city or town, and thereby taken out of the preëmption act. The only improvement on the tract was made by Towsley. The building of a hotel on an adjoining tract did not and could not affect the character of these lands. With the company, the project of building a town failed, and he was left the sole occupant of the land. The previous survey into lots by an exploded company, and a single dwelling house, are quite insufficient to impress upon an otherwise vacant tract of eighty acres, the character of a city, or to withdraw it from the operation of the preëmption law ; especially after the town enterprise was abandoned: Left by this company without any title to the lands, it would be unjust in the extreme, to deny to Towsley the only means of acquiring a title, and saving the $1,500 which he had expended in building thereon.

Another objection urged against this preëmption right is, that by a previous filing on another tract, the claimant exhausted the privilege conferred upon him by the law. In the case of *Smiley* v. *Sampson, ante* 56, this question was fully considered and decided. It is, however, right

TOWSLEY v. JOHNSON.

to refer here briefly to the circumstances of this previous filing.

When he saw that the enterprise of the town was about to fail, Towsley went to the southern part of the Territory to find land which he could preëmpt. Having found a tract answering his purposes, he filed in the proper land office his declaratory statement of intention to preëmpt the tract; and, without making any improvements, returned to his home for his family, and to effect his removal. While at home, he broke his arm, and was thus laid up some weeks. As soon as he recovered he returned in company with his hired man to the tract, when he found it occupied and already preëmpted by another. He applied to the land officers for advice as to the course which he should pursue. They told him that he could not secure the land, were he to contest the entry already made, and that he had better abandon his claims thereto, and that his filing would not invalidate any subsequent entry under the preëmption law which he might seek to make. Acting under this advice, he did abandon his claims to the land, and has never since in any way asserted them. He returned home, and then laid claim to this tract. His whole conduct was open, ingenuous and fair. It commends him to our good opinion in every point of view. To say that such conduct shall be held to operate to deprive him of his right to these lands, is unreasonable.

On the question of our jurisdiction in this case, we refer to our opinion in *Smiley* v. *Sampson.*

Another objection to his claims here, is that Towsley contracted to convey the tract to McConihe, and in fact did convey a part of it to him; and in so doing, disqualified himself from preëmpting it. The facts do not support the position. Before asserting any preëmption claim to the tract, while he expected to get two town lots from the Sulphur Springs Land Company, he mortgaged them to Mc-

Conihe. But this evidently did not qualify his preëmption right. Between the date of his filing and the time he proved up, he made no conveyances. Conveyances made afterwards, whatever they were, if standing alone, do not show a previous contract. And the circumstances of his several mortgages and deeds clearly exclude the idea of any such contract. This objection is not well taken.

I have now considered each one of the objections urged against Towsley's preëmption right. They are none of them of any force. They do not either singly or all together displace the strong equity of his claim. It gives me satisfaction to find that he holds his home by sanctions of the law of the highest obligation, as well when regarded technically, as when regarded equitably. The flimsy claim of Johnson cannot prevail against his solid rights.

The decree of the District Court is affirmed with costs.

Decree affirmed.